**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CORA BATH, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br>      v.<br><br>RED VISION SYSTEMS, INC.,<br><br>                    Defendant. | Civil Action No. 2:13-02366 (SDW) (MCA)<br><br>**OPINION**<br><br>**May 29, 2014** |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Cora Bath's ("Plaintiff") Motion for Conditional Certification of Collective Action pursuant to the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, *et seq*. Also before this Court is Defendant Red Vision Systems, Inc.'s ("Defendant" or "Red Vision") Motion to Dismiss pursuant to Federal Rule Civil Procedure 12(b)(1). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). Venue is proper under 28 U.S.C. § 1391. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, Plaintiff's Motion for Conditional Certification of Collection Action is **GRANTED**, and Defendant's Motion to Dismiss is **DENIED**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, Red Vision is a Delaware Corporation headquartered in Parsippany, New Jersey that provides title search services and real estate data solutions to customers across the United States. (Compl. at ¶¶ 18-19.) Plaintiff worked in Red Vision's employ as a title examiner from approximately September 2007 until 2011. (*Id*. at ¶¶ 20-21.) In that capacity, Plaintiff earned an hourly wage plus additional compensation based upon the tasks she performed. (*Id*. at ¶ 22.) Plaintiff calls this additional compensation "piece-rate." (*Id.* at ¶ 22.) Plaintiff alleges that Red Vision failed to add her piece-rate earnings with her hourly rate of pay for purposes of calculating overtime pay. (*Id*. at ¶ 24.) She maintains that in calculating her overtime pay, Red Vision only considered her regular rate of pay. (*Id*. at ¶ 25.) As a result, Bath claims that Red Vision improperly calculated her overtime compensation when she worked more than forty hours within a work week, in violation of the FLSA. (*Id.* at ¶ 23.)

Furthermore, Plaintiff also alleges that Red Vision improperly calculated the overtime pay of all other title examiners that it employed. (*Id.* at ¶¶ 31-33.) Plaintiff contends that Red Vision had a compensation policy applicable to all its title examiners nationwide in which Red Vision purposely failed to include piece-rate pay in its calculations of overtime monies due to title examiners. (*Id*. at ¶¶ 34-35.) Plaintiff alleges that she and all other title examiners in Red Vision's employ performed the same or similar job duties and were all subjected to the same compensation policy. (*Id*. at ¶¶ 31-33.) Thus, Plaintiff claims that she and all other title examiners employed by Red Vision during the relevant time period are similarly situated. (*Id.* at ¶¶ 31-33.)

Plaintiff filed the instant Complaint on April 12, 2013. (Dkt. No. 1.) The two-count Complaint seeks (1) monetary damages on behalf of Plaintiff and the putative class members due to Red Vision's miscalculation of overtime pay in violation FLSA and (2) declaratory judgment

2

declaring that Red Vision violated the FLSA and issuing an injunction precluding Red Vision from engaging in the unlawful practices in the future. (*Id.* at ¶¶ 42-65.) Shortly after the Complaint's filing, Katherine Prevatt, who is allegedly similarly situated to Plaintiff, filed a Notice of Consent to Join the Collective Action on April 16, 2013. (Dkt. No. 3.) On June 13, 2013, Patrick Harran also filed a Notice of Consent to Join the Collective Action. (Dkt. No. 5.) On October 1, 2013, Plaintiff filed the instant Motion for Conditional Certification of Collection Action. (Dkt. No. 14.) On the same day, Red Vision moved to dismiss this matter for lack of subject matter jurisdiction. (Dkt. No. 15.) Subsequent to the filing of these motions, Kathleen Deaver, Amy Lane, and Helen Norman filed Notices of Consent to Join the Collective Action on March 25, 2014 and April 3, 2014, respectively. (Dkt. No. 27, 28.)

## II.   DISCUSSION

### A.   Red Vision's Motion to Dismiss

Red Vision's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for want of subject matter jurisdiction is premised on its position that Plaintiff's FLSA claim is now moot due to Plaintiff's failure to accept Red's Vision offer of judgment. (Def.'s Br. 5-7.) On or about June 24, 2013, Red Vision served Plaintiff with an offer of judgment in the amount of $3,000 plus reasonable attorneys' fees and costs pursuant to Fed. R. Civ. P. 68. (*Id.* at 5.) Red Vision maintains that this sum is far greater than the value of Plaintiff's claim, which, if she ultimately prevails on her FLSA claim, Red Vision calculates to be $593.30. (*Id.*) Plaintiff failed to respond to the offer and it therefore lapsed fourteen (14) days after it was made. (*Id.*) Red Vision thus argues that since it offered Plaintiff more than she could recover at trial if she is successful on her claim, no case or controversy exists and this Court lacks subject matter jurisdiction. (*Id.* at 7.)

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Where, as here, the defendant's motion is supported by sworn statements of facts, the district court must treat the motion as a factual attack, rather than a facial attack. *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982). "In such a case, the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*. It is important to note both that "the existence of disputed material facts will not preclude [a] trial court from evaluating for itself the merits of jurisdictional claims," and that "a plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen*, 549 F.2d 891. The plaintiff must not only demonstrate that a controversy existed at the time it filed suit but that it continues to exist throughout the litigation. *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992). "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Gould Elecs Inc.*, 220 F.3d at 178 (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Under Article III, Section 2 of the United States Constitution, the jurisdiction of federal courts is limited to "cases" and "controversies." U.S. Const. art. III, § 2. The Supreme Court has interpreted this limitation as "restrict[ing] the authority of federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471 (1982)). The case or controversy must not only exist at the time of the complaint's filing but must be extant throughout the duration of the litigation. *Symczyk*, 133

S. Ct. at 1528. Thus, if "the issues presented in a case are no longer 'live' or the parties lack a legally cognizable interest in the outcome, the case becomes moot and the court no longer has subject matter jurisdiction." *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004). Third Circuit law is clear that an offer of complete relief moots a plaintiff's claim "as at that point the plaintiff retains no personal interest in the outcome of the litigation," and the Court must dismiss the claim for lack of subject matter jurisdiction. *Id*.

Relying on *Symczyk*, Red Vision argues that its offer of judgment moots Plaintiff's claim because the offer is far greater than what Plaintiff could hope to obtain at trial. (Def.'s Br. 7.) Plaintiff counters that Red Vision's offer of judgment does not fully compensate her for actual and liquidated damages, and further argues she cannot even assess whether Red Vision's offer would provide full relief as Red Vision has refused to furnish to her all applicable weekly pay and time records. (Pl.'s Br. 4.) Plaintiff additionally rejects that Red Vision's offer would constitute full relief because Red Vision has used a legally incorrect mathematical formula in arriving at the amount she is owed. (Pl.'s Br. 4-5.)

Red Vision's reliance on *Symczyk* is misplaced. The *Symczyk* Court explicitly did not reach the issue of whether an offer of complete relief moots the plaintiff's FLSA claim, the key issue to be decided here. *Symczyk*, 133 S. Ct. at 1528-29. In *Symcyzk*, as the employee had not appealed the district court's conclusion that the employer's offer of judgment mooted her FLSA claim, the Supreme Court made clear in no fewer than three separate instances that it was assuming, without deciding, that the employer's offer of judgment mooted the employee's individual FLSA claim. *Id*. at 1528-29, 1532. The High Court acknowledged the circuit split with regard to whether "an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot," but nevertheless "declin[ed] to resolve the split, because the issue [was] not properly before" the

5

Court. *Id*. at 1528-29. Having assumed the issue without deciding it, the Court's analysis turned "to the question of whether [the employee's] action remained justiciable based on the collective-action allegations in her complaint." *Id*. at 1529. The Court concluded that the absence of any opt-in plaintiffs combined with the offer that fully satisfied her claims deprived the employee of any personal stake in the litigation's outcome and thereby, stripped the Court of jurisdiction. *Id*. at 1529. Thus, *Symczyk* is clearly inapposite to the threshold issue presented here.

Further, Plaintiff vehemently disputes that Red Vision's offer provides her with complete relief, as opposed to the employee in *Symczyk* who conceded that point. (Pl.'s Br. 4.) Additionally, Plaintiff argues that Red Vision's damages calculation is legally incompetent as it is based on a two-week period. (Pl.'s Br. 4-5.) Plaintiff correctly points out that overtime calculations must be premised upon a weekly basis. *See* 29 C.F.R. § 778.103. Red Vision tacitly acknowledges this point and advances three methods that could be used to calculate the allegedly withheld overtime payments. (Def.'s Reply Br. 2-7.) Accordingly, based on the disputed amount of damages and dispute regarding the method of calculating it, the Court is unable to determine the amount of damages that would fully compensate Plaintiff, even if it were to accept the pay stubs and timesheets submitted with Red Vision's motion as authentic.

Relying on *Beery v. Quest Diagnostic, Inc.*, 2013 U.S. Dist. LEXIS 95096 (D.N.J. July 8, 2013), Red Vision further argues that the presence of opt-in plaintiffs Harran and Prevatt is not an impediment to granting its motion to dismiss. (Def.'s Br. 8-9.) Red Vision's reliance on *Beery* is misplaced as *Beery* is not controlling with respect to the issues presented here. In *Beery*, the court dismissed the named plaintiffs' FLSA claim in favor of arbitration based on arbitration clauses in their employment agreements. *Beery*, 2013 U.S. Dist. LEXIS at *1, *3. After dismissing the named plaintiffs' claims, the court then determined that it did not have subject

6

matter jurisdiction over the opt-in plaintiffs' claims, who had opted-in prior to the court's grant of conditional certification. *Id*. at *2-*3, *7-*8. Contrary to the facts presented here, the named plaintiffs' FLSA claims in *Beery* were dismissed pursuant to an arbitration clause. Additionally, the opt-in plaintiffs in *Beery* opted-in without the filing of a motion for conditional certification. *Id*. at *2. Here, the filing of the motion for conditional certification on October 1, 2013 relates back to the filing of the Complaint on April 12, 2013. *See Weiss*, 385 F.3d at 348 (holding that absent undue delay in the filing of a class certification motion, the filing of the certification motion relates back to the filing of the complaint when there is an offer of judgment that could potentially moot the named plaintiff's claim). Accordingly, the presence of opt-in plaintiffs, as discussed more fully *infra*, further precludes this Court from granting Red Vision's motion to dismiss. *See Bamgbose v. Delta-T Group, Inc.*, 724 F. Supp. 2d 510, 517 (E.D. Pa. 2010) (finding that plaintiff's *accepted* offer of judgment still did not moot the collective FLSA action where there were opt-in plaintiffs).

Finally, this Court notes that it shares the concern raised by many other courts who are troubled by the "pick-off" strategy employed by many defendants, wherein they make an offer of judgment to the named plaintiff relatively early in the litigation in hopes of mooting the plaintiff's claim and consequently, stripping the court of jurisdiction. This strategy has the potential of frustrating the purpose of the collective actions. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions . . . ."); *Weiss*, 385 F.3d at 344 ("allowing the defendants here to 'pick-off' a representative plaintiff with an offer of judgment less than two months after the complaint is filed may undercut the viability

of the class action procedure, and frustrate the objectives of this procedural mechanism for aggregating small claims"); *Reyes v. Carnival Corp.*, 2005 U.S. Dist. LEXIS 11948, *9-*10 (S.D. Fla. May 25, 2010) ("Finally, it is important to note that the defense strategy of providing an offer of judgment to the initial plaintiff in a FLSA collective action in order to bar the case from proceeding as to all similarly situated plaintiffs violates the very policies behind the FLSA."); *Reed v. TJX Cos.*, 2004 U.S. Dist. LEXIS 21605, *7 (N.D. Ill. Oct. 27, 2004) (noting with concern the defendant's "pickoff" strategy). Therefore, Red Vision's motion to dismiss is denied.

### B. Plaintiff's Motion for Conditional Certification of Collection Action

In pertinent part, the FLSA states as follows:

> An action to recover the liability prescribed in [this section] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). While the statute does not define the phrase "similarly situated," the Third Circuit instructs district courts to undertake a two-step process in determining whether an action may proceed as an FLSA collective action. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *White v. Rick Bus Co.*, 743 F. Supp. 2d 380, 386-87 (D.N.J. 2010). The first step is conditional certification, which is then followed by final certification at step two. *White*, 743 F. Supp. 2d at 387. Importantly, "the 'plaintiff bears the burden of satisfying the similarly situated standard.'" *Id.* (citation omitted).

While district courts in this circuit appear to be divided as to the governing standard utilized at the conditional certification step, the Third Circuit has embraced the "modest factual showing" standard, which requires that the plaintiff show a "*modest factual nexus* between their situation

8

and that of the proposed class members." *Id*. at 387 (citation omitted, emphasis in original); *see Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 n.4 (3d Cir. 2012) ("We adopted the 'modest factual showing' standard, under which a 'plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees.'") (citation omitted)).

In support of her motion, Plaintiff submitted a declaration in which she avers that beginning in approximately May 2011, Red Vision instituted a policy wherein it paid title examiners an hourly wage plus "production pay"[1]. (Dkt. No. 14, Ex. C at ¶ 6.) The production pay was based upon the quantity of work performed. (*Id*. at ¶ 7.) She maintains that although she worked in excess of forty hours during some workweeks, the overtime payments she received were based solely upon her regular wage and did not include her production pay. (*Id*. at ¶¶ 8-10.) Plaintiff states that Red Vision continued using this payment policy throughout her tenure there, which ended in November 2011. (*Id*. at ¶ 10.) She attached two paycheck stubs dated August 5, 2011 and September 2, 2011 that she contends show that her production pay was not taken into account when calculating her overtime wages. (Dkt. No. 14, Ex. C.) Moreover, Plaintiff avers that Red Vision utilized the same payment policy for all of its title examiners; she knows this was done based upon her personal experiences in Red Vision's employ and her conversations with other title examiners and Red Vision management. (Dkt. No. 14, Ex. C at ¶¶ 10-14.)

Similarly, former Red Vision employee Kathy Prevatt ("Prevatt") submitted a declaration substantially corroborating Plaintiff's account. Prevatt declares that she worked as a Red Vision title examiner from September 2008 until June 2012. (Dkt. No. 14, Ex. D at ¶ 3.) She states that in approximately May 2011, Red Vision began compensating all title examiners with an hourly

---

[1] Plaintiff uses the term "piece-rate pay" in the Complaint but "production pay" in the declaration and briefs; both terms appear to refer to the same compensation policy.

wage plus production pay. (*Id*. at ¶13.) She states that in work weeks when she logged more than forty hours, her overtime payments were exclusively based on her hourly wage and did not include production pay. (*Id*. at ¶¶ 15-16.) She, too, avers that all title examiners were compensated under the allegedly unlawful policy when she departed the company in June 2012. (*Id*. at ¶ 17.) Prevatt maintains that her knowledge of Red Vision's compensation policy is based on her personal experiences at the company and her discussions with other title examiners and management. (*Id*. at ¶¶ 19-21.) Prevatt attached a paycheck stub dated May 4, 2012, which she claims evidences Red Vision's failure to include her production pay in its overtime calculation. (Dkt. No. 14, Ex. D.) Furthermore, Patrick Harran ("Harran") also submitted a declaration in support of Plaintiff's motion. He likewise avers that during his career as a title examiner at Red Vision, it instituted a compensation policy starting in May 2011 that paid title examiners an hourly wage in addition to production pay. (Dkt. No. 14, Ex. E at ¶¶ 3, 11.) Harran maintains that when he worked more than forty hours during a given work week, Red Vision exclusively included his hourly wage in the overtime calculation. (*Id*. at ¶¶ 12-14.) He states that all title examiners were subject to this compensation policy, which continued until he left the company in March 2012. (*Id*. at ¶ 15.) Harran also avers that his personal knowledge is acquired from his discussions with other title examiners and Red Vision management. (*Id*. at ¶¶ 17-18.)

      Based upon Plaintiff's declaration and the declarations of Prevatt and Harran, Plaintiff has sustained her burden of demonstrating that there is a "factual nexus" between her situation and that of the putative class members. All three former Red Vision title examiners aver that Red Vision instituted a compensation policy in approximately May 2011, applicable to all title examiners, which excluded their production pay when calculating their overtime wages. This Court also notes that three prospective plaintiff's opted in to the collective action after the instant

motion had been fully briefed. (Dkt. No. 27, 28.) Consequently, this Court finds that Plaintiff and Red Visions' other title examiners are similarly situated for FLSA purposes.

In connection with the instant motion, Plaintiff submitted a proposed notice of pendency. Plaintiff's proposed notice states, in part, as follows:

> ***IF YOU ARE OR WERE A <u>TITLE EXAMINER</u> FOR RED VISION SYSTEMS AT ANY TIME BETWEEN <u>2011 TO THE PRESENT</u> WHO WORKED MORE THAN FORTY HOURS WITHIN A WORKWEEK, A COLLECTION ACTION LAWSUIT MAY AFFECT YOUR RIGHTS.***

(Dkt. No. 14, Ex. G) (emphasis in original). In addition to having the notice mailed to potential class members, Plaintiff seeks to have the notice posted in common, non-public employee spaces at each of Red Vision's locations nationwide. (Pl.'s Br. 19-20; Pl.'s Reply Br. 11.) Plaintiff also seeks limited discovery of the names, addresses, and e-mail addresses of potential class members. (Pl.'s Br. 20-21.) Red Vision objects to the proposed notice's content and also to Plaintiff's posting and discovery demands. Specifically, Red Vision argues that the potential class period is overbroad because it discontinued the complained of compensation policy in July 2012. (Def.'s Br. 8.) Red Vision also argues that the notice must contain a statement advising the prospective plaintiffs of Red Vision's defenses, the putative plaintiffs' discovery obligations, and that they could be liable for defense costs. (*Id*. at 8-9.) Red Vision also maintains that the notice should specify that opt-in plaintiffs are not obligated to be represented by Plaintiff's counsel and that the notices should be returned to the Court, rather than Plaintiff's counsel. (*Id*. at 9.) Red Vision raises several other objections, including that the notice should not be posted at its locations and that Plaintiff's limited discovery request is overbroad and thereby violates the potential plaintiffs' privacy interests. (*Id*. at 9-10.)

The Supreme Court has held that district courts have broad discretion under FLSA to facilitate notice to potential collective action plaintiffs. *See Hoffmann-La Roche v. Sperling*, 493

U.S. 165, 169 (1989); *Woodard v. FedEx Freight E., Inc.*, 250 F.R.D. 178, 185 n.6 (M.D. Pa. 2008) ("District courts, however, have discretion to 'facilitat[e] notice to potential plaintiffs' of the pending collective action.") (citation omitted)). The Court noted that "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." *Hoffman-LaRoche*, 493 U.S. 165 at 172. As a threshold matter, Plaintiff does not object to narrowing the collective action class to the time period when the allegedly unlawful compensation policy was in effect, namely, May 2011 through July 2012. (Pl.'s Reply Br. 7.) Accordingly, the putative collective class is hereby limited to current and former Red Vision title examiners employed at any location nationwide that worked in excess of forty hours in any work week from May 2011 through July 2012, inclusive. Additionally, the notice should specify that opt-in plaintiffs are free to be represented by counsel of their choosing. *See Garcia v. Pancho Villa's of Huntington Village, Inc.*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009).

    Red Vision's remaining objections are unfounded. Red Vision's position that the notice must include recitation of its defenses is meritless. A statement that "Red Vision denies Plaintiff's allegations and maintains that it paid its title examiners in full as required by law" is sufficient to advise the potential plaintiffs that Red Vision rejects Plaintiff's allegations. *See Delaney*, 261 F.R.D. at 59 (stating that a sentence in the notice advising that defendants denied that they violated the FLSA was sufficient). Furthermore, a statement in the notice that highlights the opt-in plaintiffs' discovery obligations and possibility of having to pay defense costs is unwarranted. Such statements have the potential of chilling participation in the collective action. *Id.* at 59 ("Defendants cite no other Court that has required a notice to warn opt-in plaintiffs of potential

discovery obligations and liability for Defendants' costs or required plaintiffs to sign the consent form on penalty of perjury.").

Additionally, Plaintiff's limited discovery request is narrowly tailored to identify potential class members and is therefore appropriate. *See Hoffman-LaRoche*, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees."). Red Vision's suggestion that opt-in plaintiffs' consent to join forms should be returned to the Court instead of Plaintiff's counsel is unnecessary because the notice will specify that opt-in plaintiffs may choose their own counsel. Finally, Red Vision's objection to the notice being posted at its locations is meritless. Numerous courts have endorsed posting the notice in the employer's locations as it ensures that a large number of potential plaintiffs are notified. *Thompson v. Peak Energy Services USA, Inc.*, 2013 U.S. Dist. LEXIS 143704, No. 13-0266, *8-9 (W.D. Pa. Oct. 4, 2013); *Garcia*, 678 F. Supp. 2d at 96 ("Moreover, while defendants object to the posting of the Notice at their business locations - and request an order prohibiting it - such a practice has been routinely approved in other cases.") As such, subject to the modifications discussed above, Plaintiff's proposed notice is approved.

### III.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Conditional Certification of Collective Action is **GRANTED**. Red Vision's Motion to Dismiss, however, is **DENIED**.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:   Madeline Cox Arleo, U.S.M.J.
       Parties